Ronald Lee LONG, a minor, by Lewis Daniel Long, his father and next friend, and James Brooks, Jr., a minor by Lillian Brooks, his mother and next friend, individually and on behalf of all other minor children similarly situated

and

Robert D. Neal, Intervenor,

v.

Honorable Jerome ROBINSON, Associate Judge, Municipal Court of Baltimore City and State of Maryland.

No. 15033.

United States Court of Appeals, Fourth Circuit.

Aug. 11, 1970..

Joseph A. Matera and Michael A. Millemann, Baltimore, Md., for original plaintiffs.

Peter Smith and Edwin S. Villmoare, Baltimore, Md., for intervening plaintiff.

Francis B. Burch, Atty. Gen., Edward F. Borgerding, Robert DiCicco, and Alfred J. O'Ferrall, Asst. Attys. Gen., for the State of Maryland.

## MEMORANDUM AND ORDER

WINTER, Circuit Judge.

Application has been made to me as a single United States Circuit Judge for a stay of an order of the district court entered August 6, 1970 pending appeal. Rule 62(g), F.R.Civ.P.

The order sought to be stayed, filed simultaneously with an opinion expressing fully the district court's views, declared unconstitutional certain provisions of the Ann.Code of Md., Art. 26, § 51 et seq., and the Charter and Public Local Laws of Baltimore City, Art. 4, § 240, which exempt Baltimore City from the uniform state definition of juvenile age as 18 years. By virtue of these statutes a child in Baltimore City ceases to be juvenile upon obtaining the age of 16. The age for determining who is a juvenile is important, because juveniles are treated differently from adults when they are charged with a violation of the criminal laws and for other purposes. The order required that all persons between 16 and 18 years of age when arrested (except in the case of alleged capital offenders) who are currently confined in the city jail and other places of incarceration in Baltimore City awaiting trial be released to the juvenile authorities "as expeditiously as possible."

The order did not seek to implement in other respects the declaration of invalidity, but the opinion recited that the court was of the view that such affirmative relief was unnecessary because public officials charged with enforcement of the statutes would comply with the declaration without the necessity of an injunction or restraining order. Although not mentioned in the order, the opinion indicated that the principles decided therein should be applied retroactively to May 15, 1969, the date on which suit was instituted.

The stay is sought by defendants on the assertion that the district judge reached incorrect legal conclusions. Defendants cite no authority for this contention not considered by the district court. Factually, defendants contend that they are entitled to a stay because of the substantial administrative and economic burdens which will be placed upon them in complying with the order. These burdens would prove unnecessary and would not be reimbursible if the order is reversed on appeal. Testimony was proffered (the proffer of counsel being accepted as to what the witnesses would have testified without the necessity of hearing the witnesses) that it is estimated that the order will ultimately double the yearly caseload of juvenile causes in Baltimore City. This increase, the proffer concluded, will require an expansion of special temporary detention facilities for juveniles, training schools, courts and court personnel, social workers and other personnel to apprehend, process and deal with the persons accused of offenses other than capital crimes between the ages of 16 and 18. It is said also that equipment to transport juveniles other than the customary "paddy wagon" will be required, and increased burdens will be placed upon the police department of Baltimore City which will require an increase of personnel to avoid a diminution in other police work. Additionally, it is said that the doubling of the caseload will adversely affect the treatment program for juveniles under the age of 16 until the

additional facilities and personnel can be provided.

While it is obvious that the annual number of adult causes in Baltimore City will decrease by the same amount that the number of juvenile causes will increase, the effect will not be a "wash" transaction. This is so because juvenile causes require special facilities, special personnel and special procedures. Additionally, many, if not most, charges lodged against those between the ages of 16 and 18 are presently determined in the Municipal Court of Baltimore City. The Municipal Court has no juvenile jurisdiction so that under existing law juvenile causes must be dealt with by the Supreme Bench of Baltimore City. Judges and other court personnel may not be transferred or assigned from the Municipal Court to the Supreme Bench. Because insufficient funds to meet the estimated increased costs of additional juvenile causes are not available, it may be necessary to convene a special session of the General Assembly of Maryland to make appropriations to meet the increased costs attributable to the order.

## I.

■ The legal principles by which an application for a stay of an order of a district court pending appeal is to be judged may be simply stated. The leading authority is Virginia Petroleum Jobbers Association v. Federal Power Commission, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958) cited with approval in Permian Basin Area Rate Cases, 390 U.S. 747, 773, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968). The principles set forth in the Virginia Petroleum Jobbers Association case appear to be the law of this circuit. Airport Commission of Forsyth County, N. C. v. Civil Aeronautics Board, 296 F. 2d 95 (4 Cir. 1961). They have subsequently been expressly adopted in the fifth and second circuits. Belcher v. Birmingham Trust National Bank, 395 F.2d 685 (5 Cir. 1968); Eastern Air Lines, Inc. v. Civil Aeronautics Board, 261 F.2d 830 (2 Cir. 1958). See also

Pitcher v. Laird, 415 F.2d 743 (5 Cir. 1969); Covington v. Schwartz, 230 F. Supp. 249 (N.D.Cal.1964), mod. and aff'd, 341 F.2d 537 (9 Cir. 1965). Briefly stated, a party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay.

■ In the instant case the district judge twice refused oral requests for a stay. Ordinarily, when a party seeking a stay makes application to an appellate judge following the denial of a similar motion by a trial judge, the burden of persuasion on the moving party is substantially greater than it was before the trial judge. See, for example, the opinion of Mr. Justice Jackson in United States ex rel. Kanuf v. McGrath, October Term 1949, quoted in Breswick & Co. v. United States, 75 S.Ct. 912, 100 L.Ed. 1510 (1955); Magnum Import Co. v. Coty, 262 U.S. 159, 43 S.Ct. 531, 67 L.Ed. 922 (1923); Railway Express Agency, Inc. v. United States, 82 S.Ct. 466, 7 L.Ed.2d 432 (1962). See also Organized Village of Kake v. Egan, 80 S.Ct. 33, 4 L.Ed.2d 34 (1959). The premise of this rule, however, is that the motion for a stay has received full consideration by the trial judge. Leaving aside the suggestion advanced by defendants that the district judge did not afford them a full opportunity to develop the facts with regard to a stay beyond those which were adduced at the trial, it appears that some of the statistics and some of the evidence as to the effects of the order were not developed until after the trial. Therefore I will treat the application as if it were made to me in the first instance and not give weight to the district judge's denial of the motion.

## II.

■ From consideration of the factors set forth above, I conclude that

the stay should be denied. My reasoning with regard to each follows:

A. *Probability of success on appeal.* I conclude that on the main questions decided the probability of success on appeal is not substantial. In arriving at this conclusion I emphasize that I do not, expressly or impliedly, decide any of the substantive issues which will be reached on appeal or express any view on the ultimate merits of the appeal. But in studying the opinion of the district court I note that the court has applied a conservative test of what constitutes denial of equal protection of the laws. Unlike most equal protection cases, the district judge received extensive testimony in his search for a possible rational basis for a difference in definition between what constitutes a juvenile in Baltimore City and what constitutes a juvenile in the rest of the state. The district judge found as a fact that there was no rational basis for the distinction, and the finding does not appear to be clearly erroneous. All of the legal authorities which the parties claim are pertinent to the litigation were considered by the district judge and appear to have been correctly applied.

The question of in what retrospective period the principles announced are to be applied may be more debatable. It would appear that those included within the class should be entitled to the same relief as the named plaintiffs, but what should be done with regard to those whose trials have not been stayed awaiting the outcome of this litigation is more uncertain. However, the number of persons falling into this category cannot be substantial although the parties are presently unable to estimate their number.

B. *Irreparable injury to moving party.* I do not minimize the cost, the inconvenience or the burdens which will be placed upon the defendants should they begin compliance with the order. However, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." Virginia Petroleum Jobbers Association v. Federal Power Commission, 259 F.2d at 925. Even if the economic and administrative impact on the defendants is substantial and, indeed, irreparable should the order be reversed on appeal, I cannot conclude that this factor is entitled to much weight when I consider the historical context in which the litigation arises.

As more fully set forth in the opinion of the district court, the lower age for juveniles in Baltimore City was the subject of careful study and full legislative consideration in 1966 by the Legislative Council and in particular by the so-called Rasin Committee. Based upon this study a legislative determination to abolish the distinction between Baltimore City and the rest of the state was made in 1966, to become effective July 1, 1969. Obviously the effective date of the change was deferred to make possible the construction of facilities, the employment of personnel and the revision of procedures to deal with the change. So far as I have been able to determine nothing was done.

In 1969 the effective date of the change was postponed for another year, and again, with the possible exception of inter-departmental planning, no effective steps to cope with the change were taken. This was so notwithstanding the view that the distinction between the juvenile age in Baltimore City and the rest of the state was unconstitutional had been advanced in 1966 and that this litigation attacking the constitutionality of the distinction was instituted on May 15, 1969.

Again in 1970, with the instant case pending, the effective date of the change was postponed until 1971. With the exception of some inter-departmental consideration as to the effect of the change, some preliminary planning for a new detention facility and the authorization for a bond issue to be voted on at the General Election in November, 1970 to finance the construction of some facilities, no steps have been taken to

implement the decision made in 1966. There has apparently been no thought given to the revision of police procedures and no substantial steps taken for the opening of temporary places of detention for the small percentage of juveniles not released initially into the custody of their parents prior to the time that the district court's opinion was filed.

Regrettably I must conclude that the principal irreparable injury which defendants claim that they will suffer if the order of the district court is not stayed is injury of their own making. The defendant State of Maryland has postponed the moment of truth as long as possible, but the moment of truth is now at hand. It would seem elementary that a party may not claim equity in his own defaults.

C. *Harm to plaintiffs.* Little need be said with regard to this factor. Defendants are willing to concede that the named plaintiffs may obtain the immediate benefit of the district court's order, but they press for the stay as to other members of the class on whose behalf the named plaintiffs sue. I do not believe that the named plaintiffs can or should be so severed. Aside from the likely deleterious consequences which will be visited upon persons between the ages of 16 and 18 by reason of their temporary or permanent incarceration with persons over the age of 18 should the order be stayed, the other civil disabilities enumerated by the district judge are entitled to great weight.

D. *Public interest.* In accord with the views of those who have carefully studied the question—both the members of the Rasin Commission and those who gave uncontradicted testimony before the district judge—the public interest lies in immediate implementation of the order. The problem has been studied in Maryland since 1966, and so far as the record before me shows, the views of those competent to express them with regard to how to meet the problem are virtually unanimous. The feeling is that what has not been done should have been done both for the benefit of persons within the 16 to 18 year age bracket and for society in general.

The Attorney General has raised the possibility—but not pressed it—that if the General Assembly is convened in special session to finance implementation of the order, that body may seek to solve the problem by lowering the maximum juvenile age to 16 throughout the state. I recognize that the General Assembly has that authority, and if it exercises it, the legal issues will be obviated, and all plaintiffs will be denied relief. I hope it unlikely that the General Assembly would lightly cast aside the time, thought and study which have gone into this problem by seizing upon this retrogressive expedient in the light of its thrice recognized need for changing the old distinction. But a judicial officer should not grant a stay to forestall adverse legislative action; rather the stay should be granted or withheld on the facts of record before the judge.

III.

Finding that defendants have not established their entitlement to a stay under a balancing of the factors which govern the grant, I deny it. Because it is obviously in the public interest to do so, I will, with the consent of parties and with their offers of complete cooperation, expedite the appeal, to the end that it will probably be heard at the September Term. The filing of the record and the schedule for the filing of briefs will be worked out by the clerk with counsel. Printing of briefs will be excused.

It is so ordered.